UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| SPECTRUM BRANDS, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>COMPTON'S, LLC, a Missouri Limited Liability Company, and RICHARD COMPTON, individually and as guarantor,<br><br>Defendants. | Case No. 4:16-cv-00627 |

## COMPLAINT

Plaintiff, Spectrum Brands, Inc. ("Spectrum," or "SBI"), by its attorneys, Fox Galvin, LLC, for its Complaint for Breach of Contract, Declaratory Judgment, Specific Performance, and other relief against Defendants Compton's, LLC ("CLLC") and Richard Compton ("Compton") (collectively "Defendants") alleges as follows:

## NATURE OF ACTION

1.  This action arises out of Defendants' failure to fulfill their indemnity obligations to Spectrum relating to the remediation of environmental contamination at a former manufacturing facility located in Macon, Missouri (the "Site" or "the Facility").  Spectrum seeks (A) indemnification under (i) the "Property Transfer Agreement (with Assignment and Assumption of Environmental Liabilities)" entered into as of September 13, 2011 ("2011 Agreement") between Spectrum and CLLC and Compton, jointly and severally, and Compton, as guarantor, and (ii) under the "Former Macon, Missouri Toastmaster Facility Environmental Work and Indemnity Agreement" entered into as of November 12, 2015 between Spectrum and CLLC and Compton, jointly and severally, and Compton, as guarantor, ("2015 Agreement"), (B) specific

performance of Defendants' obligations under the "Administrative Settlement Agreement and Order on Consent for Removal Action" ("ASAOC") entered into as of November 20, 2015 between the United States Environmental Protection Agency ("USEPA"), Spectrum, and CLLC.

## JURISDICTION

2.      This Court has diversity jurisdiction over the parties under 28 U.S.C. § 1332(a) because the parties are citizens of different States and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.  The Declaratory Judgment Act, 28 U.S.C. § 2201 authorizes this Court to grant Plaintiff declaratory relief.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Defendants CLLC and Compton reside in this District, a substantial part of the events and omissions giving rise to the claim occurred in this District, and a substantial property that is the subject of the action is situated in this district.

## THE PARTIES

4.      Plaintiff Spectrum is a Delaware corporation with its principal place of business in Middleton, Wisconsin.

5.      Defendant CLLC is a Missouri Limited Liability Company and the current owner of the Site.  Upon information and belief, CLLC's address is 2005 N Missouri, Ste B, Macon, MO 63552.

6.      Defendant Richard Compton is a citizen of the State of Missouri.

## FACTS

### *Historic Operations at the Site*

7.      Beginning in approximately 1956, the McGraw Edison Company manufactured small-electronic appliances at the Site.

8. In 1980, McGraw-Edison, as part of an asset sale, sold its Portable Appliance and Tool Group division as part of a leveraged buy-out, resulting in the formation of Toastmaster Inc.

9. On January 8, 1999, Toastmaster was acquired by Salton, Inc. Salton later changed its name to Russell-Hobbs, Inc. and Toastmaster operated as a wholly-owned subsidiary of Russell-Hobbs. Spectrum Brands acquired Russell-Hobbs in 2010.

10. From 1956 until at least 1991, trichloroethylene ("TCE") was stored at the Site in an above ground 5,000 gallon tank and used as part of the manufacturing process which took place at the Site.

11. TCE is a non-flammable liquid chlorinated hydrocarbon used as an industrial solvent.

12. TCE is a listed hazardous substance under in 40 C.F.R. § 302.4.

13. In 1991, as a result of an investigation, TCE was discovered in the soil and groundwater underlying the Site. The suspected cause was spillage of TCE product over a long period of time during tank filling activity.

14. Toastmaster ceased small appliance manufacturing at the Site in approximately December 2000. Thereafter it used the Site for distribution and repair until approximately February 2008.

*Clean-Up of the Site*

15. In approximately 1996, Toastmaster submitted an application to the Missouri Department of Natural Resources ("MDNR") to permit it to voluntarily remediate the Site's environmental contamination under MDNR's Voluntary Cleanup Program ("VCP").

16. Under the VCP, environmental investigation and groundwater monitoring continued for a number of years, including the time period 1999 through 2012, when Toastmaster was acquired by Salton, and then Salton, which became Russell-Hobbs, was acquired by Spectrum Brands.

*Compton's, LLC's Purchase of the Site and the 2011 Indemnification Agreement*

17. On or about September 13, 2011, Spectrum and CLLC entered into a Property Transfer Agreement (with Assignment and Assumption of Environmental Liabilities) (the "2011 Agreement"). (Attached hereto as Exhibit A).

18. As part of the 2011 Agreement, CLLC purchased the Facility and assumed, by contractual indemnity, all environmental liabilities associated with the Facility.

19. Under the 2011 Agreement, Compton is jointly and severally responsible for the contractual indemnity, and, as guarantor, also agreed to indemnity Spectrum for all environmental liabilities associated with the Facility.

20. Also under the 2011 Agreement, CLLC and Compton, jointly and severally, and Compton as guarantor, agreed to assume all environmental clean-up obligations, including remediating the Site to the satisfaction of MDNR under its VCP.

21. Specifically, §§ 9.1 and 9.2 of the 2011 Agreement state:

> 9.1 **Transfer and Assumption of Liabilities**. On the Closing Date, Buyer [CLLC] shall assume, pay and be responsible for all Environmental Clean-Up Liability, Claims, Clean-Up Costs, Legal Defense Costs, damages, risks, liabilities (including strict liability), obligations, responsibilities, duties, encumbrances, liens, judgments, settlements, fines, penalties, loss, costs and expenses of any nature whatsoever (collectively, "Liability" or "Liabilities") associated with the Property which may now exist or hereafter arise, be imposed upon or incurred directly or indirectly by Buyer or any or any Person, arising out of or in connection with (i) any existing or future Environmental Laws; (ii) all Pre-Existing Pollution Conditions, including migration of such Pre-Existing Pollution Conditions after Closing; (iv) all bodily injury, property damage and natural resource damage associated with, caused by or arising from Pre-Existing Pollution Conditions, and (v) all New Pollution Conditions at or associated with the Property (collectively, the "Assumed Obligations").
>
> 9.2 **Buyer's Clean-Up Obligation**. Buyer acknowledges that the Property is enrolled and participating in the Brownfield/Voluntary Cleanup Program within the Missouri Department of Natural Resources with respect to soil and groundwater contamination identified at the Property and that Buyer has reviewed, or has had an opportunity to review, the investigation and other reports on file with the Missouri Department of Natural Resources concerning contamination at

4

the Property. After Closing, Buyer shall expeditiously perform all Cleanup and pay all Clean-Up Costs required in order to obtain a written determination ("NFA Letter") from the Missouri Department of Natural Resources, in form and substance reasonably acceptable to Seller, stating that the Property has been remediated to a level safe for its intended use and that no further action need be taken at the Property related to any Pollutant. Buyer shall obtain said NFA Letter not later than ten (10) years following the Closing Date. Buyer's obligations under this Section 9.2 are "Buyer's Cleanup Obligations." Buyer's Clean-Up Obligations are not transferable or assignable without the written consent of Seller, which consent shall not be unreasonably withheld.

22. In addition, under the 2011 Agreement, CLLC and Compton jointly and severally, and Compton as guarantor, agreed to indemnify Spectrum and its affiliates and subsidiaries from and against all liabilities and claims, and costs associated therewith, relating to the Assumed Obligations.

23. Specifically, § 10.1 of the 2011 Agreement says:

> **Indemnification**. Buyer shall be responsible for, and shall indemnify, protect, defend and hold harmless Seller and Seller's parent, affiliates, subsidiaries, managers, members, directors, officers, shareholders, employees, trustees, beneficiaries, agents, attorneys, representatives and contractors, and their respective successors and assigns (collectively with Seller, the "Seller Parties") from and against any and all Liabilities arising directly or indirectly from, out of, or in connection with the Assumed Obligations and Buyer's Clean-Up Obligations.

24. Compton, as guarantor, is jointly and severally liable under the Guaranty Agreement to the 2011 Agreement (the "2011 Guaranty").  (Attached hereto as Exhibit B).

25. Specifically, § 7 of the 2011 Guaranty says:

> The obligations of Guarantor hereunder are joint and several and are independent of obligations of Buyer. A separate action or actions may be brought and prosecuted against Guarantor, whether any action is brought against Buyer or whether Buyer be joined in any such action or actions; and Guarantor waives the benefit of any statute of limitations affecting their liability hereunder or the enforcement thereof. Guarantor agrees that its liability is absolute and unconditional without regarding to the liability is independent of any other guarantees at any time in effect with respect to all or any part of Buyer's liability to Seller, and that Guarantor's liability hereunder may be enforced regardless of the existence of any other such guarantees. The liability of Guarantor shall be primary under this Guaranty and, if any right of action shall accrue to Seller, Seller may at its option proceed against Guarantor, without having commenced

any action or having obtained any judgment against Buyer, it being the understanding of Guarantor that this Guaranty is a guaranty of payment and not of collection.

26. The 2011 Agreement allows for specific performance of the CLLC's and Compton's obligations under the 2011 Agreement.

27. Specifically, § 11.2 of the 2015 Agreement says:

Default by Buyer. In the event that Buyer defaults in the payment or performance of any of its material obligations under this Agreement, including Buyer's Clean-Up Obligation, Seller may seek to enforce this Agreement by specific performance, in addition to all other rights and remedies available at law or in equity. In May 2012, MDNR received a letter from CLLC whereby CLLC was substituted for Spectrum and assumed responsibility for continuing the Site in the VCP.

28. On or about January 16, 2014, MDNR terminated the Site from Missouri's VCP due to CLLC's failure to respond to MDNR's requests for additional investigation, clean-up, and monitoring.

*Governmental Demands for Environmental Remediation following VCP Termination*

29. In May 2014, MDNR became concerned TCE may be adversely impacting the indoor air quality of the Facility building and nearby residences. MDNR conducted indoor air sampling within the Facility's building, the results of which detected the presence of TCE.

30. In July 2014, MDNR conducted indoor air, and sub-slab soil gas sampling at several residences in the immediate vicinity of the Facility. The sampling results detected the presence of TCE in the indoor air and/or sub-slab gas samples in two of the nearby residences.

31. MDNR communicated the sampling results to the United States Environmental Protection Agency (USEPA) and requested its assistance.

32. USEPA then contacted Spectrum and CLLC and requested them to either individually or collectively install vapor mitigation systems in the two nearby residences with TCE at levels of concern to USEPA.

6

33. Spectrum sent a demand to CLLC by email, on or about September 10, 2014, asking CLLC to (and Compton as guarantor) take actions needed to address MDNR's and USEPA's concerns at the Site, including, but not limited to, installation of vapor mitigation systems and further investigation at the Site, and that it protect and indemnify Spectrum from liability and loss.  Compton failed to do so.

34. In October, 2014, USEPA, acting pursuant to its authority under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601 et seq., installed an environmental remediation system consisting of sub-slab vapor mitigation devices at the two nearby residences where TCE had been detected.

*The ASAOC and the 2015 Indemnity Agreement*

35. Also in October 2014, USEPA notified both Spectrum and CLLC that it required additional investigation and/or remediation of environmental conditions affecting the Facility and possibly adjacent properties. In lieu of USEPA performing this work, it offered to allow Spectrum and/or CLLC the opportunity to perform such work pursuant to an administrative settlement and administrative consent order.

36. Spectrum and CLLC indicated a willingness to conduct the work, and for approximately twelve months thereafter, CLLC, Spectrum, and USEPA negotiated the terms of the contemplated settlement and consent order.

37. By letter dated October 5, 2015, Spectrum again demanded CLLC (and Compton as guarantor) to indemnify Spectrum and protect it from any liability and loss associated with environmental conditions at the Site, including USEPA's demands to conduct investigations and further remediation.

38. On or about November 12, 2015 (and in advance of the ASAOC becoming effective) Spectrum, CLLC, and Compton, as guarantor, entered into the Former Macon, Missouri

7

Toastmaster Facility Environmental Work and Indemnity Agreement (the "2015 Agreement"). (Attached hereto as Exhibit C).

39. Under the 2015 Agreement, CLLC, and Compton, as guarantor, agreed to perform all obligations required by the ASAOC within the time periods required by the ASAOC.

40. Specifically, § 2.1 of the 2015 Agreement states:

> As between CLLC and SBI, and except as provided in Section 2.2 below, CLLC shall perform and fulfill all obligations required under the ASAOC within the time periods required by the ASAOC. Compton, as guarantor, agrees to perform and fulfill such obligations should CLLC fail to perform. Compton, as guarantor, also agrees to perform and fulfill all obligations that CLLC has tinder this Agreement should CLLC fail to perform.

41. Also, under the 2015 Agreement, CLLC and Compton agreed indemnification was owed to Spectrum under the 2011 Agreement for any loss or liability Spectrum incurred under the ASAOC.

42. The 2015 Agreement creates an independent indemnity obligation where CLLC agreed to indemnify Spectrum for any loss and liability incurred under the ASAOC, and Compton guaranteed CLLC's performance of the indemnity obligation.

43. Specifically, §2.3 of the 2015 Agreement states:

> CLLC or Compton represent and acknowledge that SBI's participation in the ASAOC is not voluntary, and that SBI is entering into the ASAOC to resolve EPA's claims against it. As such, CLLC and Compton represent and acknowledge that EPA's claims asserted or capable of assertion against SBI are claims for which indemnity is owed under the Sales Contract, and under the Guaranty Agreement. CLLC (and Compton as Guarantor) shall reimburse and hold SRI harmless from all fines, penalties, liabilities, claims, suits, costs, loss and damages (including attorneys' fees, and consultant and expert witness costs) (collectively "Loss") that SBI incurs with regard to the ASAOC, including all such Loss that SBI may incur should it be required to assume performance of the obligations required under the ASAOC. In any future proceeding, whether to enforce this Agreement, the Sales Contract, the Guaranty Agreement, or otherwise, CLLC and Compton shall not assert that SBI is not entitled to indemnification under the Sales Contract and Guaranty Agreement for such Loss. In any event, CLLC hereby agrees to indemnify SBI for such Loss and Compton agrees to guarantee CLLC's performance of its indemnity obligations.

8

44. Lastly, under the 2015 Agreement, Compton and CLLC are jointly and severally liable to indemnify Spectrum against liability related to the Assumed Obligations.

45. Specifically, § 1.1 of the 2015 Agreement says, in the pertinent part:

> Additionally, both [CLLC and Compton], jointly and severally, have agreed to indemnify SBI and its affiliates and subsidiaries from and against all liabilities and claims, and costs associated therewith, relating to the assumed obligations.

46. The 2015 Agreement allows for specific performance of the CLLC's and Compton's obligations under the 2015 Agreement.

47. Specifically, § 4.3 of the 2015 Agreement says:

> In the event CLLC fails or refuses to perform the ASAOC or otherwise breaches, violates or defaults under the terms and conditions of this Agreement (a "Default") SBI shall notify CLLC and Compton of such Default. If CLLC or Compton fail to cure such Default within ten (10) days of notice thereof SBI, without prejudice to all rights that it possesses under the Sales Contract and the Guaranty Agreement, may exercise any of the following rights and remedies arising from such Default:
>
>     a. SBI may seek specific performance of this Agreement, as the Parties agree that SBI would have no adequate remedy at law;
>
>     b. SBI may seek damages for such Default; and
>
>     c. SBI may enforce any other right or remedy available by law or in equity.

48. In November 2015, the USEPA, Spectrum, and CLLC entered into an Administrative Settlement Agreement and Order On Consent for Removal Action, Dkt. No. CERCLA 07-2015-0006 (the "ASAOC") (attached hereto as Exhibit D).

49. Pursuant to the ASAOC, although both Spectrum and CLLC were jointly and severally liable, CLLC agreed to undertake the primary role in performing the requirements of the ASAOC. Spectrum agreed to provide financial assurance for performance if CLLC was unable to secure financial assurance in the form required by USEPA. The ASAOC requires financial

assurance in the amount of $500,000, which is USEPA's estimated cost associated with conducting the work required by the ASAOC.

50. Under the ASAOC, Spectrum became obligated to assume responsibility for conducting the ASAOC if USEPA were to determine that CLLC was unwilling or unable to perform the ASAOC, or that CLLC had ceased to perform as required by the ASAOC.

51. CLLC retained Barr Engineering Company as its contractor to perform the work specified in the ASAOC. Barr Engineering was also designated by CLLC as its Project Manager, who was to be responsible for administration of all actions required of CLLC by the ASAOC.

52. CLLC initially began to perform under the ASAOC. A project kick-off meeting occurred by conference call on December 21, 2015. Conference call participants included Richard Compton on behalf of CLLC, Richard Winkie, counsel for CLLC, Ty Morris and Tony Schroer for Barr Engineering, and Kristen Nazar and John Frey from USEPA.

53. Barr reported to USEPA that based on a site walk, it believed additional sampling of the Facility building should occur before proceeding further with the Work Plan attached to the ASAOC (the "Work Plan"). USEPA agreed Barr could prepare and submit a proposed modification to the Work Plan for USEPA approval.

*Defendants' Failure to Perform the ASAOC and Their Breach of the Indemnity Agreements*

54. Sometime prior to February 2016, Barr Engineering communicated to USEPA that it was ceasing work on the project because CLLC had failed to pay Barr Engineering for some of its outstanding invoices.

55. By letter dated February 1, 2016, Spectrum notified CLLC and Compton they were in default under the 2015 Agreement, provided CLLC and Compton ten days to cure the default, and made a third demand upon CLLC and Compton that each indemnify Spectrum and protect it

10

from any liability and loss associated with the environmental conditions at the Site, including USEPA's demands.

56. On February 2, 2016, USEPA notified Spectrum by letter that Spectrum is directed to conduct the work under the ASAOC as a result of CLLC's nonperformance. (Attached hereto as Exhibit E).

57. Since Spectrum was first notified by USEPA that the Site required additional investigation and remediation, Spectrum has incurred costs exceeding $75,000 in responding to USEPA's demands. Spectrum will incur additional costs in order to fulfill the requirements of the ASAOC absent Defendants' performance.

## COUNT I
### (Breach of 2011 Agreement and Indemnification Against CLLC and Compton - Jointly and Severally)

58. Spectrum incorporates Paragraphs 1 through 57 as if specifically set forth herein.

59. The 2011 Agreement is a valid, binding contract between Spectrum and CLLC.

60. CLLC is the current owner of the Site.

61. Spectrum has fully performed and discharged its obligations under the 2011 Agreement.

62. Under § 7 of the 2011 Guaranty, CLLC and Compton are jointly and severally liable for the obligations in the 2011 Agreement.

63. CLLC and Compton have breached the 2011 Agreement by:

   a. failing to fulfill the Assumed Obligations, as defined in the 2011 Agreement;

   b. failing to remediate the Site and/or perform an Environmental Clean-Up at the Site, as defined by the 2011 Agreement;

   c. failing to maintain the Site in MDNR's VCP and to assume all of Buyer's Clean-Up Obligations, as defined in the 2011 Agreement; and

    d. failing to obtain Financial Assurance for the Site, as defined in the 2011 Agreement.

64. As a direct and proximate result of CLLC's and Compton's breach of the 2011 Agreement, Spectrum has incurred damages in excess of $75,000.00, exclusive of interest and costs. Spectrum will incur additional costs in order to fulfill the requirements of the ASAOC absent Defendants' performance.

65. Under § 9.1 of the 2011 Agreement, Spectrum is entitled to recover its damages for the breach of the 2011 Agreement, including attorneys' fees, in bringing this action.

### COUNT II
### (Breach of 2015 Agreement and Indemnification Against CLLC and Compton - Jointly and Severally)

66. Spectrum incorporates Paragraphs 1 through 65 as if specifically set forth herein.

67. The 2015 Agreement is a valid, binding contract between Spectrum and CLLC.

68. Spectrum has fully performed and discharged its obligations under the 2015 Agreement.

69. CLLC and Compton are jointly and severally liable under § 1.1 of the 2015 Agreement.

70. CLLC and Compton have breached the 2015 Agreement by:

    a. failing to remediate the Site pursuant to the requirements and deadlines contained in the ASAOC;

    b. failing to reimburse and hold Spectrum harmless, and failing to indemnify Spectrum, from all fines, penalties, liabilities, claims, suits, costs, loss and damages (including attorneys' fees, and consultant and expert witness costs) that Spectrum incurs with regard to the ASAOC; and

    c. failing to provide the required Financial Assurance pursuant to the ASAOC, and in response to a request by Spectrum, failing to provide Spectrum with

documentation to show a lack of financial resources to obtain the Financial Assurance.

71. As a direct and proximate result of CLLC's and Compton's breach of the 2015 Agreement, Spectrum has incurred damages in excess of $75,000.00, exclusive of interest and costs. Spectrum will incur additional costs in order to fulfill the requirements of the ASAOC absent Defendants' performance.

72. Under §§ 2.3 and 4.10 of the 2015 Agreement, Spectrum is entitled to recover its damages for the breach of the 2015 Agreement, including attorneys' fees, in bringing this action.

## COUNT III
### (Breach of 2011 Agreement and Indemnification Against Compton as Guarantor)

73. Spectrum incorporates Paragraphs 1 through 72 as if specifically set forth herein.

74. The 2011 Agreement is a valid, binding contract between Spectrum and Compton, as guarantor.

75. Spectrum has fully performed and discharged its obligations under the 2015 Agreement.

76. In the 2011 Guaranty to the 2011 Agreement, Compton guaranteed that CLLC would perform its obligations under the 2011 Agreement.

77. Compton, as guarantor, has breached the 2011 Agreement by:

   a. failing to fulfill the Assumed Obligations, as defined in the 2011 Agreement;

   b. failing to remediate the Site and/or perform an Environmental Clean-Up at the Site, as defined by the 2011 Agreement;

   c. failing to maintain the Site in MDNR's VCP and to assume all of Buyer's Clean-Up Obligations, as defined in the 2011 Agreement; and

   d. failing to obtain Financial Assurance for the Site, as defined in the 2011 Agreement.

78. As a direct and proximate result of Compton's breach of the 2011 Agreement, as guarantor, Spectrum has incurred damages in excess of $75,000.00, exclusive of interest and costs. Spectrum will incur additional costs in order to fulfill the requirements of the ASAOC absent Defendants' performance.

79. Under § 9.1 of the 2011 Agreement, Spectrum is entitled to recover its damages for the breach of the 2011 Agreement, including attorneys' fees, in bringing this action.

## COUNT IV
### (Breach of 2015 Agreement and Indemnification Against Compton as Guarantor)

80. Spectrum incorporates Paragraphs 1 through 79 as if specifically set forth herein.

81. The 2015 Agreement is a valid, binding contract between Spectrum and Compton, as guarantor.

82. In the § 2.1 of the 2015 Agreement, Compton guaranteed that CLLC would perform its obligations under the 2015 Agreement.

83. Spectrum has fully performed and discharged its obligations under the 2015 Agreement.

84. Compton, as guarantor, has breached the 2015 Agreement by:

   a. failing to remediate the Site pursuant to the requirements and deadlines contained in the ASAOC;

   b. failing to reimburse and hold Spectrum harmless, and failing to indemnify Spectrum, from all fines, penalties, liabilities, claims, suits, costs, loss and damages (including attorneys' fees, and consultant and expert witness costs) that Spectrum incurs with regard to the ASAOC; and

   c. failing to provide the required Financial Assurance pursuant to the ASAOC, and in response to a request by Spectrum, failing to provide Spectrum with

documentation to show a lack of financial resources to obtain the Financial Assurance.

85. As a direct and proximate result of Compton's breach of the 2015 Agreement, as guarantor, Spectrum has incurred damages in excess of $75,000.00, exclusive of interest and costs. Spectrum will incur additional costs in order to fulfill the requirements of the ASAOC absent Defendants' performance.

86. Under §§ 2.3 and 4.10 of the 2015 Agreement, Spectrum is entitled to recover its damages for the breach of the 2011 Agreement, including attorneys' fees, in bringing this action.

## COUNT V
### (Declaratory Judgment)

87. Spectrum incorporates Paragraphs 1 through 86 as if specifically set forth herein.

88. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, there exists a justiciable controversy between Spectrum on the one hand and CLLC and Compton, as guarantor, on the other hand with respect to the parties' respective, existing, and future rights and obligations under the indemnification agreements contained in the 2011 Agreement and the 2015 Agreement relating to the remediation of the Site and which controversy may be determined by a judgment of this Court. Such judicial determination would have the effect of a final judgment upon the rights of the parties.

89. Spectrum is entitled to a declaration of its rights, and Defendant's obligations, as follows:

   a. that the Agreements at issue are valid and binding agreements;

   b. that the Agreements require Defendants to indemnify Spectrum for past and future costs of remediation of the Site and for all damages that Spectrum may suffer related to remediation work undertaken at the Site.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Spectrum Brands, Inc. respectfully asks for Judgment in its favor and against the Defendants:

A. Finding that CLLC and Compton jointly and severally breached their obligations under the 2011 Agreement;

B. Finding that Compton, as guarantor, breached his obligations under the 2011 Agreement;

C. Finding that CLLC and Compton jointly and severally breached their obligations under the 2015 Agreement;

D. Finding that Compton, as guarantor, breached his obligations under the 2015 Agreement;

E. Declaring that the 2011 Agreement and the 2015 Agreement are enforceable, legally binding contracts;

F. Declaring CLLC and Compton liable to indemnify Spectrum for all damages, including Spectrum's costs, expenses and attorney's fees it will incur prospectively as a result of breach of the 2011 Agreement and the 2015 Agreement;

G. Ordering specific performance under the 2011 Agreement and the 2015 Agreement;

H. Entering judgment in favor of Spectrum and against Compton's, LLC and Richard Compton, jointly and severally, and against Compton as guarantor, for all damages incurred and to be incurred, including Spectrum's costs, expenses and attorney's fees it incurred as a result of breach of the 2011 Agreement and the 2015 Agreement;

I. Awarding Spectrum consequential and incidental damages as a result of breach of the 2011 Agreement and the 2015 Agreement;

J. Awarding Spectrum interest, attorney's fees, consultant's fees and costs of litigation; and

K. Awarding such other and further relief as this Court may deem appropriate.

DATED:  May 3, 2016                                Respectfully submitted,

                                                SPECTRUM BRANDS, INC.

                                                By: /s/ *Sarah B. Mangelsdorf*
                                                       One of Its Attorneys

| | |
|---|---|
| Andrew H. Perellis<br>(*pro hac vice* admission forthcoming)<br>aperellis@seyfarth.com<br>Patrick D. Joyce<br>(*pro hac vice* admission forthcoming)<br>pjoyce@seyfarth.com<br>SEYFARTH SHAW LLP<br>131 South Dearborn Street<br>Suite 2400<br>Chicago, Illinois  60603<br>Telephone: (312) 460-5000<br>Facsimile: (312) 460-7000 | John E. Galvin, #36249MO<br>jgalvin@foxgalvin.com<br>Sarah B. Mangelsdorf, #59918MO<br>smangelsdorf@foxgalvin.com<br>FOX GALVIN, LLC<br>One S. Memorial Drive, 12th Floor<br>St. Louis, Missouri 63102<br>Telephone: (314) 588-7000<br>Facsimile: (314) 588-1965 |